No. 96-1140

Cheryl M. Morford,                          *
                                            *
          Appellant,                        *
                                            *
     v.                                     *
                                            *
City of Omaha, a municipal                  *
corporation and political                   *   Appeal from the United States
subdivision of the State of                 *   District Court for the
Nebraska; James Skinner,                    *   District of Nebraska.
individually and in his                     *
capacity as Chief of Police of              *
the Police Department of the                *
City of Omaha, Nebraska; John               *
Car, individually and in his                *
capacity as a police officer                *
for the City of Omaha, Nebraska,*
                                            *
          Appellees.                        *


                    Submitted:  September 11, 1996

                        Filed:  October 21, 1996


Before BOWMAN, BRIGHT, and JOHN R. GIBSON, Circuit Judges.


BOWMAN, Circuit Judge.


     Cheryl Morford appeals from the decision of the District Court[1] denying her claims for statutory damages, attorney fees, and costs, despite a jury verdict in her favor in her suit against the city of Omaha and certain law enforcement officers for the unlawful interception of her telephone conversations.  We affirm.

_____

     [1]The Honorable William G. Cambridge, Chief Judge, United States District Court for the District of Nebraska.

In the spring of 1990, a metro area task force that included, among others, the Omaha Police Department and the Douglas County Sheriff's Department, in a continuing investigation of the Omaha Hell's Angels Motorcycle Club, received court authorization to install a pen register on the telephone of Gary Apker. A pen register collects and prints out information about calls made to or from the target telephone, although it tells an investigator nothing about the content of the calls. By June 1990, investigators had sufficient information to apply for court authorization for a wiretap of Apker's telephone so that they might record his conversations. Omaha police officer John Car, who had been with the police department's special operations squad since January 1985, was assigned to assist in installing first the Apker pen register and then later the Apker wiretap. Car asked the task force to advise him approximately one week before the wiretap was expected to receive court approval, so that he might run audio tests on the equipment, a practice he regularly followed.[2]

On June 19, 20, and 21, 1990, having received notification that court approval of the wiretap was imminent, Car tapped into Apker's telephone line with audio equipment that he attached to the pen register that already was operating. Car's only purpose in doing so was to check the sound quality on the line and to be sure that the recording equipment was operating properly. As he described his testing routine, when the equipment indicated that the target's telephone was in use, Car would listen for a few seconds with headphones, then put the headphones around his neck and turn on one or more cassette tape recorders, taping the conversations. Car would then rewind each cassette tape, listen to

---

[2]Car testified that he did not wait for the wiretap to be authorized because, once the warrant was signed, it was only valid for thirty days. If something was amiss with the telephone lines or recording equipment, investigators could lose already limited wiretap time while the problem was identified and corrected.

ten or fifteen seconds of the first part of the tape and a later part of the tape, then physically destroy the tape.

On June 21, 1990, someone using Apker's telephone twice dialed the telephone number of the Old Brass Shack, a metal polishing business owned and operated by Morford and her husband.[3]  A paper tape printed out by the pen register/wiretap showed that the first call went out at approximately 12:10 p.m. and lasted only twelve seconds, a duration that, in Car's experience, indicated the call was not answered.  (He had no recollection of specific calls or conversations.)  Approximately two minutes later, another call made to the Old Brass Shack lasted one minute, eighteen seconds.

Four days later, on June 25, 1990, a state district court judge signed a warrant authorizing the wiretap on Apker's telephone.  The investigation led eventually to the arrest and prosecution of several individuals, including Cheryl Morford.  Morford entered a conditional guilty plea in federal court.  She then appealed the conviction, arguing, inter alia, that the evidence obtained from the wiretap should be suppressed for reasons related to the pre-warrant testing.  This Court concluded that the district court in Morford's criminal case properly denied suppression.  United States v. Lucht, 18 F.3d 541, 546 (8th Cir.), cert. denied, 115 S. Ct. 363 (1994).  When Car's testing procedures came to light as a result of the suppression hearing, the Omaha police department policy was changed so that no testing involving the interception of telephone conversations would occur until a wiretap was properly authorized.

In October 1993, Morford filed this civil lawsuit against the city of Omaha, Car, and Omaha police chief James Skinner under

---

[3]Morford testified that her husband was not in the shop that day, and thus it could not have been his conversation that was recorded, because he was in prison on drug charges at the time.

-3-

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2521 (1988 & Supp. II 1990) (the Act), seeking statutory damages, punitive damages, attorney fees, and costs for the unlawful interception of her telephone conversations.  After trial, a jury found in favor of Morford, but denied her claim for punitive damages.  The District Court thereafter denied Morford statutory damages, attorney fees, and costs.  Morford appeals.

Morford first argues that the District Court was without discretion to deny her an award of statutory damages when the jury found in her favor on her claim that defendants violated the Act.  That argument is foreclosed by our opinion in Reynolds v. Spears, 93 F.3d 428, 433-35 (8th Cir. 1996), where we held that the trial court has discretion under 18 U.S.C. § 2520(c)(2) (1988) to decline to award statutory damages for illegal telephone interceptions.  The question remains, however, whether the District Court abused its discretion in declining Morford's request for statutory damages in the amount of $10,000 for each violation.  We hold that it did not.

The District Court is on the record in a ruling from the bench with a number of reasons for denying statutory damages.  The court found Morford sustained no actual damages, and that the "privacy intrusion . . . appears to have been relatively minor."  Partial Transcript of Proceedings, Dec. 1, 1995, at 10.  The court concluded that those who may have played a part in the unlawful interceptions misunderstood the law and did not believe the pre-warrant testing was illegal.  Further, according to the court, Car never intended to monitor for information, or to use in any way information gleaned from any conversations that may have been intercepted in the course of his testing of his equipment.  Finally, although the testing procedure has been changed, the court found that Morford's civil lawsuit did not cause the change.

To those reasons we would add that the evidence shows Morford was recorded on only one day, two times at most, and for no more than ninety seconds total. There is no evidence that Car disclosed to anyone the substance of any conversation that he may have heard. Car was the officer assigned to handle only the technical aspects of the intercept. He was not a member of the task force investigating Apker and therefore was not privy to the details of the ongoing investigation. Car physically destroyed each tape by breaking it and ripping it out of the cassette as soon as he verified, by listening to a few seconds of the tape, that the recording equipment was operating properly. He clearly did not believe his actions were illegal and never tried to conceal the fact of his pre-warrant testing. Car's actions were part of an otherwise lawful investigation that resulted in the arrest and conviction of several individuals, including Morford, and the dissolution of a substantial conspiracy to distribute methamphetamine in the Omaha area.

In these circumstances, we conclude that the District Court did not abuse its discretion in denying Morford's request for statutory damages.

Finally, we come to the question of attorney fees and costs. Under the Act, a person whose communication is unlawfully intercepted may recover "a reasonable attorney's fee and other litigation costs reasonably incurred." 18 U.S.C. § 2520(b)(3) (1988). Because such an award is discretionary with the court, we will reverse only for an abuse in the exercise of that discretion. See Reynolds, 93 F.3d 428, 436 (8th Cir. 1996). The District Court denied fees and costs "for the same reasons [the court] found with regard to statutory damages." Partial Transcript of Proceedings at 11. Finding no abuse of discretion, we affirm.

In addition to the reasons enumerated in support of the denial of statutory damages, the most cogent reason for denying attorney

fees and costs is Morford's lack of success on her claim--statutory and punitive damages were denied. We have previously concluded that a district court would not abuse its discretion in excluding from a fee award "time spent in unsuccessfully seeking amended statutory damages and punitive damages." Bess v. Bess, 929 F.2d 1332, 1335 (8th Cir. 1991). Since statutory and punitive damages were the only relief Morford sought, and no such damages were awarded, we cannot say that the District Court abused its discretion in denying fees and costs.

Morford has claimed, both in her testimony before the District Court and in her brief, that she brought suit "mainly to make the [sic] sure the City of Omaha stopped this outrageous policy of illegally intercepting unknown members of her community." Brief of Appellant at 29. She claims that, "[b]ecause of this case, the City of Omaha has stopped" and that she should be awarded fees for accomplishing this public purpose. Id. Given the uncontroverted record in this case, that argument is unavailing.

Morford and her co-defendants were arrested in the fall of 1990. A hearing on the motion to suppress the wiretap evidence in Morford's criminal case because of Car's audio tests was held in October 1991. The undisputed testimony at the trial in this civil case demonstrates that the Omaha police department policy of performing pre-warrant audio tests by tape recording telephone conversations had been abolished by 1992--well before Morford's complaint was filed in October 1993. Thus, her claim that this suit was responsible for changing Omaha's unlawful policy must be rejected.

The judgment of the District Court is affirmed in all respects.

A true copy.

Attest:

       CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.